### No. 6814.

SUCCESSION OF MRS. P. J. MICHON. OPPOSITION OF MRS. LOUIS DUCOURNEAU.

| 30 | 213 |
|----|-----|
| 52 | 85 |

| 30 | 213 |
|----|-----|
| f122 | 543 |

The clause of a husband's will, by which his wife is constituted his universal legatee, on condition that if his sister survived his wife she should be entitled to have a certain sum from the wife's succession, does not involve a *fidei commissum*, or prohibited substitution. And hence on the death of the wife, who had accepted the husband's bequest, with the charge on it, the surviving sister of the husband has a right to claim the sum from the wife's succession.

APPEAL from the Second District Court, parish of Orleans. *Tissot,* J.

*A. J. Villeré* for executors and appellees.

*A. & W. Voorhies* for opponent and appellant.

The opinion of the court was delivered by

DEBLANC, J. The last will of Pierre Jerome Michon, probated on the sixth of April, 1872, is in the following words :

"New York, Septembre 19, 1871.

"Sain d'esprit, mais souffrant, je donne ici mes derniéres volontés, Mr. Gabriel Léaumont qui a en mains à peu près tout mon avoir, donnera à ma sœur, Estelle Michon, veuve Louis Ducourneau, trois mille dollars, et tout le reste à ma femme légitime, née Louise Mathilde Lacoste. Si ma femme mourait avant ma sœur, veuve Louis Ducourneau, la succession de ma femme serait redevable à ma sœur de trois mille dollars de plus."

That last will was probated as *a whole*, without opposition, and Michon's wife—as universal legatee of her husband, received—in money —about fourteen thousand dollars. She died on the eighth of May, 1877, and Mrs. Louis Ducourneau, relying on the last clause of her brother's will, claims from the succession of Mrs. Michon the sum of three thousand dollars. Her demand is opposed on the ground "that the condition imposed to the bequest from the husband to the wife, in the will of the nineteenth of September, 1871, is a *fidei commissum*, and, as such, null and of no effect under the 1520th article of R. C. C."

On Michon's part, there was no necessity to disguise or conceal— under a suspicious and prohibited form, his undeniable intention to add in favor of his sister, a conditional to an unconditional legacy. If, to carry out that lawful intention, he adopted a prohibited form, it could have been but through error, for he had the capacity to dispose as he did, and his sister the capacity to receive. That is not disputed.

He could legally have given what is claimed : did he give according to the form prescribed by our laws? Does his last will contain an immoral, unlawful or impossible condition—a substitution or a *fidei commissum* ? There is not—in the will—any reprobated condition, and if there had been a substitution in any of its clauses, that including the substitution would have been null as to both the wife, as a legatee, the sister as a third person, and the sister, as an heir, would have then received the very amount which she now claims as a legatee.

R. C. C. 1520.

There is, however, no substitution in the last will of Michon. His universal legatee is not charged to preserve or to return a thing to a third person, in the sense of the first paragraph of article 1520 of the Code : but—to the legacy tendered by Michon to his wife, to a liberality which she could accept or refuse, Michon has attached the condition that—if she died before his sister—the latter would be entitled to claim, from her succession, the payment of a sum of three thousand dollars.

According to the French authorities, there is no prohibited substitution :

"Dans la disposition par laquelle un testateur, après avoir institué un légataire universel, grève ce legs du legs particulier d'une somme

d'argent pour être payée en cas de mort du légataire universel, sans parenté."

Gilbert, Codes Annobis, p. 385, No. 70, p. 386, No. 80.

It is contended that the obligation imposed by the will is that the wife, or her succession, shall return to the sister another thing than that donated, and that such a disposition constituted, under the Roman law, the *fidei commissum* prohibited by ours. In this, there is an error of fact. What did the wife receive? Money. What is claimed of her succession? Money. That which she received was hers and she had the right to dispose of it at her pleasure.

As well said in the case of Groves vs. Nutt: "The legatee did not promise to preserve the money, to keep each identical dollar and return that to her father's estate. On the contrary, she was to have the use of the money as long as she lived, and she *contracted* to return as much other coin only in the event she should die without issue. If that is a *fidei commissum* or a prohibited substitution, then the thing which the depositary receives and promises to preserve and return to the depositor or the sum of money which my friend receives from me and promises to return in one week or ten years, are *fidei commissa* and substitutions."

3 A. 122 and 123.

"Il suit de là," according to Marcadé, "qu'il ne peut pas y avoir substitution quand la libéralité a pour objet des choses fongibles, en sorte que le donataire ait la libre disposition de ces choses et soit seulement chargé d'en rendre d'autres de même nature, qualité et quantité, dans ce cas, en effet, il n'y a pas obligation de conserver."

Marcadé, vol. 3, p. 418.

Read with care, Michon's will is found to contain three distinct dispositions, or one universal legacy with two charges thereon imposed. By one of said dispositions, his wife is chosen and named as his universal legatee; the two others, or the charges on the universal legacy are in favor of his sister: if she survived him and his wife, she was to receive— at his death, the sum of three thousand dollars—at the death of his wife, as much. The words used by the testator to describe and convey his intention—"La succession de ma femme sera *redevable* (accountable) à ma sœur," indicates that, as the first, the conditional legacy to his sister was a charge attached to his universal legacy and imposed upon his universal legatee.

"C'est encore une règle également applicable aux testaments et aux contrats, de prendre dans le sens qui convient le plus à la nature de l'acte, les termes susceptibles de deux sens ; par exemple, si le testateur charge son légataire universel de payer une somme à un tiers, on doit prendre cet ordre *pour un legs particulier* plutot que pour une reconnaissance de dette."

Coin. Delisle, Commentaire du Titre des Donations et Testaments, p. 447, No. 11.

"Comme la volonté du testateur fait la loi, le principe général est q'uil faut expliquer les difficultés du testament par la volonté du testateur autant que toute la teneur du testament la pourra faire connaître ; il faut pour ainsi dire y suivre à la piste toutes les traces de cette volonté."

Same book, p. 446, second paragraph of No. 4.

At the death of Michon—less the unconditional legacy to his sister, the whole of his succession was given to and received by his wife, with full and unlimited power to dispose of it, of all that composed it. That legacy was accepted by the wife as made by the husband, with the charge thereon imposed, the condition thereto attached, and—as they are an inseparable part of the legacy—its acceptance carried with it that of said charge and of said condition.

When she applied for the probating of her husband's will, could the wife have divided the legacy and divided her acceptance ? Could she have said : I take the legacy, but without the charge, without the condition ? She could not. Can her collateral relations, called to and claiming her succession as legatees, disregard, divide or qualify her absolute, entire and unqualified acceptance ? Can they change or reduce the effects of her acceptance, and of the decree rendered at her own demand and unreservedly homologating the will ? They can not.

"There can be no doubt, as held by this court, that the acceptance of a legacy burdened with a *modus*, or lawful charge under a will, is itself a contract on the part of the person accepting, obliging him, impliedly at least, to comply with the condition imposed by the will and to acquit the charge imposed upon the legacy which he receives, and that—under the Constitution of the United States, neither the State where this obligation is contracted, nor any other State can—by subsequent legislation, absolve the obligor from such obligation."

3 A. p. 122 ; R. C. C. 1890.

Under the articles of our Code, the right acquired under a conditional bequest creates more than a mere implied obligation : it creates—on the happening of the condition—an express, civil, natural and corresponding obligation on the heirs and, on the universal legatee as on the heirs, to deliver the conditional, the particular legacy, or to acquit the charge imposed by the testator on his liberalities. There is but one way of avoiding that plain and positive obligation : it is by rejecting the disposition by which it is imposed.

Rev. C. C. 2030, 1614, 1633, 1758, No. 4, 1703.

What, as to his estate, were the testator's intentions ? To transmit it to only two persons—his wife and his sister. In what proportion ?

To his sister, he gave $3000, which were to be paid to her at his death ; to his wife, he gave the balance of his estate ; but the legacy to the latter was charged with the conditional obligation that—at her death—the testator's sister, if then alive, would be entitled to claim from the succession of his wife—as a debt—an additional sum of $3000. This charge was not to accrue at the death of the wife, but that charge accrued at the opening of Michon's succession and was merely suspended until the accomplishment of the condition attached to it—the predecease of the wife.

R. C. C. Art. 1698.

The last will of those who depart this life is the last expression of their love, friendship or gratitude, and—where it violates no law—that will, by far the most sacred of all sacred things, should be as respected as the grave of the dead.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be and it is hereby avoided and reversed, the opposition of Estelle Michon, widow of Louis Ducourneau, maintained, and the executor of the last will of Louise Mathilde Lacoste, deceased widow of the late Pierre Jerome Michon, ordered to class said opponent as a creditor of the succession of said widow Michon for the sum of three thousand dollars, with legal interest thereon from the twenty-fifth of June (1877) eighteen hundred and seventy-seven ; the costs in both courts to be paid by the succession of widow Pierre Jerome Michon.

---

CONCURRING OPINION.

MARR, J.   The right and power to dispose by will being granted by law, whenever a question arises as to the validity of a testamentary disposition which is clothed with the requisite formalities, it is not necessary for the legatee or beneficiary to show affirmatively that such disposition is authorized by law.   On the contrary, the burden is on him who challenges its nullity to show that it contravenes some prohibition of the law.

The last clause in the will of Michon is peculiar.   At first blush it appears to be an attempt by the testator to dispose, in the event that his wife should die before his sister, of that which would necessarily cease to be his at the moment of his death, and would become, *eo instanti*, the property of his wife as his universal legatee.   This objection, however, on careful analysis, will be found to be more apparent than real.

The legal title to all that one dies seized of must vest, at the moment of his death, either in the instituted heir, or the universal legatee, or the particular legatees ; or in those whom the law calls to the succession *ab intestato*.   *La mort saisit le vif*.   The testator may give to one the naked ownership of his entire property, or of such part of it as he

may choose, and to another the usufruct for life, or for a term of years; but there are no words in this will which tend to create a usufruct, or to separate the absolute ownership from the immediate and continued use and enjoyment.

The will is written in plain language; and it is not difficult to ascertain precisely what the testator meant and intended. After the particular legacy to his sister, he gave all the residue of his property to his wife. The legal title, the absolute ownership, vested in the wife, the universal legatee, without restriction or limitation. He did not intend to diminish or to impair the dominion and control of the universal legatee as owner; but he desired to provide for the contingency of the death of his wife before that of his sister. He did not attempt to vest any title in his sister to any part of the residue given to his wife; nor did he require his wife to give any part of that residue to his sister. He did not charge his wife to keep or preserve any sum for his sister, nor did he request her to make any testamentary or other disposition to take effect at her death, in favor of his sister. He intended that his wife should possess, own, and enjoy with all the incidents of absolute ownership; and that his sister, if she survived his wife, should have the additional sum of $3000.

This disposition is neither a substitution nor a *fidei commissum*. The distinguishing characteristic of a substitution is, that the charge imposed on the *gravatus*, the first taker, is that he shall keep and preserve the specific thing during his life, in order that it may pass and be transmitted, at his death, to the person designated; and it necessarily involves the *fidei commissum*, the trust, that the *gravatus* will keep and preserve that thing for the person who is to take it after him, by the will and appointment of the testator. No such charge was imposed upon Mrs. Michon by the will of her husband.

That which we call simply a *fidei commissum* differs from that disposition which is designated by the word substitution, in that the charge imposed upon the fiduciary, the *gravatus*, the first taker, is to be executed during his life, whether immediately after the death of the testator, or after the lapse of a certain time. No such thing was required of Mrs. Michon; nor was any charge to keep and preserve any thing imposed upon her by the terms of the will.

The testator having the power of disposal may make a conditional legacy, or an absolute legacy, at his option; and it is not unusual to find in wills legacies dependant on the survivorship of the legatee, or to take effect only in the event of the predecease of another. The law imposes the restriction that the condition upon which the legacy depends shall not be either illegal, or immoral, or impossible. Michon left no forced heirs, and his sister would have been called to his succession as

one of his legitimate heirs, for all that appears she would have been his only heir if he had died intestate. There can be nothing either illegal or immoral in that feature of a testamentary disposition by which the whole or part of a succession reaches one who, though not a forced heir, would have been called to the succession *ab intestato;* and the condition of the predecease of the wife was not only not impossible but it was actually realized.

If after the particular legacy to his sister, and the universal legacy to his wife, the testator, instead of using the phraseology, "*Si ma femme mourr ait'avant ma sœur, la succession de ma femme serait redevable à .ma sœur de trois mille dollars de plus,*" he had left his sister the additional sum of $3000, in the event of her surviving his wife, he would simply have attached to the universal legacy the condition that this additional sum should be paid to his sister in the event of her surviving his wife. He did not intend to create a debt in favor of his sister to be paid by his wife; because that would have diminished the legacy to the wife. Evidently, and most naturally, he intended to make his wife the chief beneficiary of his will; and while, after his wife he preferred his sister, having already placed her above want by the absolute legacy of $3000, he desired to make additional provision for her only in the uncertain event of her surviving his wife. When the wife accepted the universal legacy, she assumed the obligation resulting from the conditional legacy in favor of the sister; and that obligation was one which might never become absolute or exigible : which could not become absolute during the life of the wife: which could become exigible only after her death ; and which could be acquitted only out of her succession. Therefore, when the testator said in his will, the succession of my wife shall be indebted, or accountable, to my sister, he simply expressed precisely what would have been the legal consequence and effect of a legacy in favor of his sister conditioned upon her.surviving his wife.

The wife might have lost by misfortune or imprudence, or might have squandered and dissipated by extravagance, not only the entire fortune left her by her husband, but any and all other property belonging to her, so that her succession might not have sufficed to acquit this legacy ; but that circumstance could in no manner affect the validity of the disposition. The intention of the testator is clear: the purpose is lawful: the uncertain event contemplated by him simply as a possibility has actually happened ; and it is not material to inquire whether he might not have chosen terms more apt, since those which he used suffice to show, beyond doubt, what his intention was, and to accomplish the purpose he had in view. The disposition in question.violates no policy or prohibition of the law ; and it must be respected and maintained.

I concur in the decree pronounced by Mr. Justice DeBlanc.

CONCURRING OPINION.

SPENCER, J.   I think that the testament provides in substance, as follows :

First—An absolute legacy to the sister of $3000.

Second—An absolute legacy to the wife of the residue of the estate, with a charge to pay the sister $3000 if the sister survived the wife.

There can be no doubt that the testator could legally charge the legacy to the wife with the payment of a sum to the sister.   It is equally certain that this sum imposed in favor of the sister could be made payable *with a term* or *on condition*.

If on condition, then that condition might be any future and uncertain event ; such as the marriage of the wife or survivorship of the sister.   The latter is the condition in this legacy.   The fact that the testator says that " his wife's succession will owe the $3000 " is only a manner of speaking induced by the knowledge of the testator that under the bequest his sister would only be entitled to payment after his wife's death, and therefore out of her succession.   If the wife was not willing to incumber herself and therefore her estate with *this debt*, she could have renounced the legacy.

It is clear to my mind that this bequest to the sister by way of charge upon the wife's legacy is a mere conditional legacy, and not a *fidei commissum*.

I concur in the decree pronounced by the court.